UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANKLIN L. HODGE,

        Petitioner,

v.                                Case No. 3:21-cv-1060-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

    Petitioner Franklin L. Hodge, an inmate of the Florida penal system,
initiated this action on October 18, 2021, by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] Hodge challenges a 2013
state court (Duval County, Florida) judgment of conviction for armed robbery.
He raises one ground for relief, alleging ineffective assistance of trial counsel
based on counsel's failure to argue at trial that the object Hodge carried during
the robbery did not qualify as a deadly weapon. See Petition at 4-7.
Respondents submitted a Response in opposition to the Petition. See Response

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the
document page numbers assigned by the Court's electronic docketing system.

to Order to Petition for Writ of Habeas Corpus (Response; Doc. 5). They also submitted exhibits. <u>See</u> Docs. 5-1 through 5-23. Hodge filed a brief in reply. <u>See</u> Petitioner's Response to Respondent's Answer (Reply; Doc. 6). Accordingly, this action is ripe for review.

## II. Relevant Procedural History

On March 15, 2013, the state filed an amended information in <u>Hodge v. State</u>, No. 2013-CF-8788 (Fla. 4th Cir. Ct.), charging Hodge with armed robbery. Doc. 5-1 at 229. At the conclusion of a trial on March 19, 2013, a jury found Hodge guilty of robbery with a special finding that he carried a deadly weapon during the commission of the offense.[2] <u>Id.</u> at 261. On May 21, 2013, the trial court sentenced Hodge to a mandatory minimum term of life imprisonment as a Prison Releasee Reoffender. <u>Id.</u> at 357-63. Hodge, with the help of appellate counsel, filed with the trial court a motion under Florida Rule of Criminal Procedure 3.800(b)(2), which the trial court denied. <u>See</u> Doc. 5-5.

On direct appeal, with the benefit of appellate counsel, Hodge raised six grounds of trial court error. Doc. 5-6. The state filed an answer brief, Doc. 5-7, and Hodge replied, Doc. 5-8. The First District Court of Appeal (First DCA) per curiam affirmed Hodge's conviction and sentence without a written opinion on

---

[2] The trial court conducted a consolidated jury trial on four of Hodge's pending state court cases: Case Nos. 2003-CF-13452; 2011-CF-8786; 2011-CF-8787; and 2011-CF-8788. <u>See</u> Doc. 5-2. However, the claim raised in the Petition only involves No. 2013-CF-8788.

June 3, 2014, Doc. 5-9 at 4, and issued the mandate on June 19, 2014, <u>id.</u> at 3. Hodge did not seek further review with the United States Supreme Court.

Hodge then filed with the trial court a pro se motion to correct illegal sentence under Rule 3.800(a) on September 26, 2014, Doc. 5-10 at 4, which the trial court denied on April 24, 2015, <u>id.</u> at 24. Hodge appealed the trial court's order, Doc. 5-11, and the First DCA per curiam affirmed the order without a written opinion on November 19, 2015, Doc. 5-14 at 4. The First DCA issued the mandate on January 21, 2016. <u>Id.</u> at 3.

While his Rule 3.800(a) motion was pending, Hodge filed with the First DCA a petition alleging ineffective assistance of appellate counsel. Doc. 5-15. The First DCA denied the petition and denied Hodge's motion for rehearing on February 24, 2015. Docs. 5-16, 5-17. Also, while his appeal of the trial court's order denying his Rule 3.800(a) motion was pending, Hodge filed with the trial court a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 5-18. The trial court granted in part and denied in part the Rule 3.850 motion; and resentenced Hodge in Case Nos. 2011-CF-8786 and 2011-CF-8787. Docs. 5-19, 5-20. Hodge appealed the trial court's order. Doc. 5-21. The First DCA per curiam affirmed the trial court's Rule 3.850 order without a written opinion on October 20, 2021, Doc. 5-23 at 3, and issued its mandate on November 17, 2020, <u>id.</u> at 2.

### III. One-Year Limitations Period

Respondents concede that the Petition was timely filed. Response at 3-5. Thus, Hodge filed this action within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Hodge]'s claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

6

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

7

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

8

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365–366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).
[5] Murray v. Carrier, 477 U.S. 478 (1986).

10

> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting

<u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513

U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective

assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.
> Ct. 2052. A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. <u>Id.</u>, at 689, 104
> S. Ct. 2052. The challenger's burden is to show "that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the

13

> Strickland standard was incorrect but whether that
> determination was unreasonable — a substantially
> higher threshold." Knowles v. Mirzayance, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference—this one to a state court's decision—when we are

considering whether to grant federal habeas relief from a state court's

decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Analysis

In his sole ground for relief, Hodge alleges that trial counsel was

ineffective for failing to argue during his motions for judgment of acquittal that

the object Hodge carried during the robbery in question did not qualify as a

deadly weapon. Petition at 4. As support, Hodge cites section 790.001(13),

Florida Statutes, which specifically excludes "a common pocketknife" from the

definition of "weapon." Id. at 5. He also cites to the victim's trial testimony in

which she stated that Hodge never pointed the knife at her or threatened her with it. Id. at 4-5.

The record demonstrates, and Hodge admits, that he never raised this claim in his Rule 3.850 motion or otherwise properly presented the ground to the state court for consideration.[6] Id. at 7, 9; Reply at 6. Thus, the claim is unexhausted and procedurally defaulted.

Neverthelesss, Hodge asks that the Court overlook the procedural bar citing to Martinez v. Ryan, 566 U.S. 1 (2012), and arguing that his lack of postconviction counsel constitutes cause and prejudice to overcome this default. Petition at 7-8; Reply at 5-12.

The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of

---

[6] While Hodge, in his Rule 3.850 motion, raised an "insufficiency of the evidence" claim based on similar allegations about the absence of a "deadly weapon," he did not raise a claim that his trial counsel was ineffective for failing to make those arguments during trial. See Doc. 5-18 at 22-27. Notably, in its Rule 3.850 order, the trial court denied his "insufficiency of the evidence claim" because "claims concerning insufficiency of the evidence to warrant a conviction are not cognizable in a motion for postconviction relief." Doc. 5-20 at 15-16. In any event, even if "all the facts necessary to support the claim were before the state courts or [if a] somewhat similar state-law claim was made," because Hodge failed to raise with the state court the exact ineffective assistance of trial counsel claim now before the Court, it remains unexhausted. See Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (citing Anderson v. Harless, 459 U.S. 4, 6 (1982)).

15

this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if the petitioner demonstrates it "has some merit." Martinez, 566 U.S. at 14.

Here, considering the record, the Court finds Hodge has not shown that his underlying ineffective assistance of counsel claim is substantial. In Florida, robbery becomes a first degree felony punishable by imprisonment not to exceed life imprisonment "[i]f in the course of committing the robbery[,] the offender carried a firearm or other deadly weapon." § 812.13(1), (2)(a), Fla. Stat. The statute does not define "deadly weapon." Id. Rather, the Florida Supreme Court has explained that "[w]hether or not the weapon involved is to be classed as 'deadly' is a factual question to be resolved by the jury under appropriate instructions." Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997) (quoting Goswick v. State, 143 So. 2d 817, 820 (Fla. 1962), receded from on

16

other grounds by, State v. Smith, 240 So. 2d 807 (Fla. 1970)). While a "common pocketknife" is excluded from the definition of a "weapon" in section 790.001(13), Florida Statues, under certain circumstances, a pocketknife nevertheless may be deemed a "deadly weapon" under Florida law. See J.M. v. State, 872 So. 2d 985 (Fla. 1st DCA 2004) (holding there was sufficient evidence for assault with a deadly weapon where defendant displayed pocketknife and threatened to poke victim in the chest); Durden v. State, 743 So. 2d 77 (Fla. 1st DCA 1999) (finding that whether an object was a deadly weapon was a jury question where defendant held open blade of pocketknife to victim's throat); Porter v. State, 798 So. 2d 855 (Fla. 5th DCA 2001) (holding question of whether pocketknife was a weapon was a jury question when pocketknife was carried in its open position); State v. Nixon, 295 So. 2d 121 (Fla. 3d DCA 1974) (finding whether or not pocket knife was a deadly weapon is a factual jury question); see also Walls v. State, 730 So. 2d 294, 294-95 (Fla. 1st DCA 1999) (finding whether knife at issue constituted weapon was a jury question and "[t]o the extent [L.B. v. State, 700 So. 2d 370, 373 (Fla. 1997)] establishes a per se rule for the definition of common pocketknife, the rule may only be invoked by a defendant who establishes conclusively that the knife in question has a blade length of four inches or less and that it was carried in the common manner, i.e. in a folded position."); Gust v. State, 558 So. 2d 450, 452-53 (Fla. 1st DCA 1990) (stating "even if appellant only had a key-chain knife, the fact

17

that such is excluded from "weapon" status under section 790.001(13) does not, of itself, preclude a finding that he committed armed robbery, i.e., robbery with a weapon.").

During trial, the victim, Jessica Dick (JD) testified that when Hodge approached the counter of the Kangaroo convenience store, he "pulled something out of his pocket and wrapped it in a shirt" when he said, "this is what's going to happen, I need you to give me all of your money." Doc. 5-2 at 45-46. When asked what Hodge pulled out of his pocket, JD testified it was "like a pocketknife, like a small knife" with a blade of "maybe two inches, three inches tops." Id. at 45. During JD's trial testimony, the state also entered into evidence and presented to the jury a surveillance video of the incident. Id. at 48-51. While JD stated she could not see the knife on the video, she confirmed that he did pull a knife out of his pocket when he said that he needed JD to give him all the money. Id. at 50. JD confirmed the knife was never pointed directly at her. Id. at 58. JD further testified that because the knife was tucked under Hodge's shirt, "the full blade wasn't exposed" and she simply saw "the edge of the back of the blade" in his shirt, but that she could see the handle of the knife clearly. Id. at 45, 58.

After considering this evidence, the trial judge would correctly deny a judgment of acquittal to allow the jury to make the factual determination of whether the object Hodge possessed during the robbery met the definition of a

18

"deadly weapon." Indeed, the evidence showed Hodge held the knife in an open position and brandished it in a manner to instill fear while demanding that JD provide him with money. And Hodge's argument that he never pointed the knife at JD or made specific verbal threats does not change this analysis. Cf. Thompson v. State, 748 So. 2d 394, 394 (Fla. 1st DCA 2000) (finding evidence was sufficient for conviction of armed robbery where victim testified the appellant raised his shirt, showing what appeared to be a firearm in the defendant's pants, though victim could not see the whole object, even when the appellant never verbally threatened the victim). Accordingly, Hodge has failed to show that but for trial counsel's failure to raise this argument in support of his motions for judgment of acquittal, the outcome of his trial would have been different; and trial counsel cannot be deficient for failing to raise a meritless argument. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). As such, the Court finds that this ineffective assistance of counsel claim is not "substantial"; and Hodge's failure to exhaust is not excused under Martinez. Hodge is not entitled to federal habeas relief on this claim, and the Petition is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hodge seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hodge "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action **is DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Hodge appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of January, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

JaxP-12
C:    Franklin L. Hodge, #320184
        Counsel of record